# United States District Court

__CENTRAL__ DISTRICT OF __ILLINOIS__

UNITED STATES OF AMERICA

v.

LARRY SWINK

CRIMINAL COMPLAINT

CASE NUMBER: 07- MJ-6034

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __April 17, 2007__, in __McDonough__ County, in the __Central__ District of __Illinois__ defendant, (Track Statutory Language of Offense)

LARRY SWINK, distributed more than fifty (50) grams of a mixture and substance containing methamphetamine, a Schedule I controlled substance,

in violation of Title __21__ United States Code, Section(s) __841(b)(1)(B)__

I further state that I am a(n) __Special Agent - DEA__ and that this Complaint is based on the following facts:

SEE ATTACHMENT

Continued on the attached sheet and made a part hereof:  ☒ Yes   ☐ No

s/ Agent
Signature of Complainant
Paul Larsen
Special Agent - DEA

Sworn to before me and subscribed in my presence,

__May 4, 2007__ at __Peoria, IL__
Date                          City and State

JOHN A. GORMAN
United States Magistrate Judge
Name & Title of Judicial Officer

s/John A. Gorman
Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF ARREST WARRANT

The Springfield, Illinois, Resident Office of the Drug Enforcement Administration in January 2007 joined the Illinois State Police with an investigation into the methamphetamine trafficking activities of Larry PUCCI. DEA SA Paul Larsen identified PUCCI as a long-distance truck driver living in Sarasota, Florida. A confidential source, hereafter referred to as CS, told police that he/she had been receiving methamphetamine from PUCCI for approximately the past two to three years. In addition, the CS said he/she would negotiate by cellular telephone with PUCCI, who would then send the methamphetamine to the CS in Macomb, Illinois. The methamphetamine was inside Federal Express packages and sent through the Federal Express delivery system. According to the CS, PUCCI sent the packages from several Western states while he was on his trucking routes. To repay PUCCI, the CS sent bank money orders to PUCCI using Express Mail through the United States Postal Service. The CS directed the payments to PUCCI's home at 1522 Cottonwood, Sarasota, Florida.

In January, February and March 2007, the CS acquired methamphetamine in Macomb, Illinois, from PUCCI on four separate occasions. Two of the Federal Express shipments were for one ounce each; one Federal Express package contained two ounces; and the fourth delivery, in person, was for four ounces.

In March 2007, PUCCI told the CS that he was sick and was going to stop driving his truck for a while. PUCCI told the CS that an associate named Larry SWINK would take over PUCCI's methamphetamine distribution to the CS. During a recorded telephone conversation on March 20, 2007, PUCCI said he was in Florida on his way to Los Angeles. The CS and PUCCI then discussed PUCCI's medical condition. PUCCI told the CS that a guy named Larry SWINK would take over what PUCCI was doing and his truck. SWINK was supposed to take over dealing with everybody PUCCI did. In addition, PUCCI said SWINK had been doing three people for PUCCI. PUCCI said those people were in Norfolk, Virginia, in Atlantic City, New Jersey, and in Philadelphia, Pennsylvania.

During that same telephone call, PUCCI said SWINK lived in Pensacola, Florida, or actually in Robertsdale, Alabama. PUCCI said he planned on meeting SWINK when he went back toward home, so SWINK could take over PUCCI's tractor-trailer. PUCCI said he told SWINK about the CS, and that SWINK had known about the CS for a year. PUCCI said all his people will like SWINK because SWINK was such a nice guy. PUCCI told the CS to continue sending PUCCI the money, since he was taking a little cut of what SWINK did.

In regard to SWINK, PUCCI told the CS that he "pretty much saved his bacon." When PUCCI met him, SWINK was on the verge of losing everything. PUCCI knew SWINK, also a trucker, went to the East Coast and that PUCCI was having trouble taking care of those three guys in that area. PUCCI told SWINK he could make "X" and what he had to do to earn that money. PUCCI said SWINK had been doing that for the past six to eight

1

months. SWINK thanked PUCCI for helping him out, but PUCCI said thanks wasn't necessary since SWINK was doing a job like PUCCI was doing and taking a risk just like PUCCI.

PUCCI ended up telling the CS that SWINK's telephone number was 251-751-9176.

The CS then began having recorded telephone conversations with SWINK, who used telephone number 251-751-9176. Arrangements were made for SWINK to send two ounces of methamphetamine to the CS via Federal Express, with the CS to send payment to PUCCI. On April 17, 2007, the CS was in Macomb and received a Federal Express package that contained two ounces of methamphetamine. SA Larsen and SA Gorsuch, who were with the CS at the time of delivery, took possession of the package and subsequently performed a field test, which produced a positive response for the presumptive presence of methamphetamine. After receiving the package, the CS telephoned SWINK to let him know the package arrived. Police monitored and recorded the telephone call.

During a review of calling records for PUCCI's telephone, SA Larsen determined that PUCCI's telephone called 251-751-9176, the number used by SWINK, on approximately 400 occasions between November 10, 2006, and February 3, 2007. In addition, the review of calling records indicated 251-751-9176 called PUCCI's telephone on approximately 124 occasions between the same time period.

Information from Cingular showed the subscriber of 251-751-9176 was Gloria Swink of 14459 Sherwood Highland Road, Fairhope, Alabama. A computerized inquiry of commercial databases showed a Larry SWINK, white male, date of birth December 20, 1951, with an address of 14459 Sherwood Highland Road, Fairhope, Alabama. In addition, police also learned SWINK had a Florida commercial driver's license, listing an address in Pensacola, Florida.

On April 30, 2007, the CS spoke with PUCCI by telephone. During the conversation, the CS learned that SWINK would soon be going to Arizona to acquire methamphetamine and could deliver methamphetamine to the CS. On May 1, 2007, the CS spoke by telephone with SWINK, who said he was going to acquire methamphetamine in Arizona and would subsequently meet with the CS in Illinois at some point around May 5-6, 2007.

The CS in this case was arrested in December 2006 in possession of approximately 10 grams of methamphetamine. The CS originally told agents he had been receiving methamphetamine from PUCCI since 2002, but in a later interview said the starting date was in approximately 2004. The CS hadn't been formally charged as of May 1, 2007.

Investigators have been able to verify a large portion of the CS' statements, to include the CS' Federal Express and Western Union history with PUCCI. In addition, the CS

provided first names of some of PUCCI's associates. Police were subsequently able to match those first names with full identities through telephone records.

s/Agent

Special Agent Paul Larsen
Drug Enforcement Administration

Sworn to and subscribed to
Before me this date,

May 4, 2007

s/John a. Gorman
JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE
Peoria, Illinois

3